the appellant in Sandoval. Good morning. May it please the Court, my name is Philip Hornick. I represent petitioners who are Isaiah Sandoval and Amalia Franco, who are husband and wife, and their daughter Mariana Sandoval. I would like to reserve three minutes of time for rebuttal. You may do so, Counselor. Thank you. Petitioners have lived in Oregon since 1989. Mr. Sandoval and Ms. Franco are the parents of two children, born in Oregon, Jasmin and Jesus. Jasmin will be six years old next month. Jesus is four and a half. Mariana Sandoval is the parent of Eduardo, who is four years old and also was born in Oregon. Petitioners and their children all reside together. They've never been arrested or had encounters with law enforcement other than contacts with U.S. immigration authorities. Petitioners were placed in deportation proceedings in 1996. At an October 1996 deportation hearing, petitioners conceded that they were deportable. They informed the Immigration Court that they wished to apply for suspension of deportation so that they could become legal permanent residents. Their applications were not perfected because their former counsel, James Valinotti, failed to notify them of the date of their final or so-called merits deportation hearing. As a result of Mr. Valinotti's inaction, petitioners were ordered deported in absentia. But for the ineffective assistance of Mr. Valinotti, who has since been suspended from practice of law, petitioners would have been able to apply for suspension of deportation. This form of relief no longer exists for them under current immigration law. Counsel, I think the threshold problem you have is to persuade us that there is indeed a final order of deportation such that we have jurisdiction to entertain your claim. The problem is the order simply closed the proceeding. It did not, did it not fail to order deportation? That is correct, Your Honor. But the way the Board's order is worded, petitioners have no forum to seek a review of the decision that they're statutorily barred from seeking suspension. Okay. But there are no removal proceedings pending, are there? Not at this time. That is correct. So your clients are not in any jeopardy at the moment? That is correct. But our position is that that still leaves us with a ruling on their eligibility for suspension that can only be reviewed by this Court. If proceedings are recast as removal proceedings, they will have no opportunity to challenge the ruling that they're statutorily barred from suspension. The problem with this recent legislation, including the REAL ID Act, is that Congress has taken away more and more jurisdiction in this Court to deal with petitions for review from the BIA. And I'm just wondering if this isn't a situation in which, notwithstanding what you've described in terms of the proceedings that have occurred, we don't have what we I don't believe that the REAL ID Act leaves petitioners in a better or worse position than they were before the enactment of REAL ID. May I ask you about that? Because you didn't mention it in your briefs. It was mentioned in a footnote in the red brief. But I have the same issue that Judge O'Scanlan has. How do you reconcile your view that jurisdiction should be evaluated under INA 106A with 106D of the REAL ID Act, which requires us to treat a petition for review filed under INA 106A as if it had been filed under the permanent provisions of 8 U.S.C. 1252? And that's a And whether or not you have to wait until there is an order of removal before we would have jurisdiction in this case under the REAL ID Act? I don't believe that REAL ID changes the statutory definition in Section 101 of the Immigration does not review the question of suspension eligibility. We the petitioners are effectively at a dead end to review that question. That is not a question that we believe can be reviewed if there are removal proceedings. And it's for that reason that since petitioners have conceded they're deportable, and there's no question of that, we believe that within the statutory definition of final order, we the petitioners are still within that section. They couldn't question it if they're ordered deported? They couldn't question the ruling on suspension of deportation? There's no judicial review there? Well, we believe that's the case because Do you have any case supporting that theory? I do not. But I look to Section 240A, the statute for cancellation Well, let me clarify that. I believe it's Section 239 of the current Act describing what is available as forms of relief in removal proceedings. And Section 240A is the section covering cancellation of removal. There's no provision in the current law to apply for suspension of deportation. So I mean, I don't, I feel a little odd putting myself in this position, but I think if we went back to the court in removal proceedings, both at the we do not have jurisdiction to consider a suspension of application claim. So that's why we feel this matter could only be reviewed at this time. I understand your argument. Please proceed. And I do want to emphasize that there is a significant difference between the remedy of suspension of deportation and the remedy of cancellation of removal. Most significantly for this case, to qualify for cancellation, a nonlawful permanent resident must establish that their removal from the United States would result in exceptional and extremely unusual hardship to their U.S. citizen children or lawful permanent resident children or spouse or parent who are lawful residents or citizens. To qualify for suspension, an applicant must establish only that their deportation would result in extreme hardship to themselves or their U.S. citizen children or lawful permanent resident spouse, parent, or child. So that's why we feel that there is a significant difference between the two remedies and why we feel it's important that the right to pursue suspension be preserved for Petitioners. Counsel, you have about two and a half minutes. Yes. Thank you. And I will rest at this time. You may do so. We will hear from the government. Good morning. Again, Jocelyn Wright on behalf of Respondent, the United States Attorney General. Again, the threshold issue before the Court is whether or not there is a final order of removal which the Court can exercise jurisdiction to review. And as the appealing party, Petitioner bears the burden of satisfying all of the prerequisites to an exercise of jurisdiction. The statute is very plain. But it's a legal issue, is it not? It's not a... It is a legal issue. It is a legal issue, Your Honor, in the sense that, you know, whether or not he will be able to get judicial review of the lack of suspension, the lack of availability of suspension of deportation to Petitioners. But the fact that it's a legal issue doesn't overcome the threshold limitation on the Court's jurisdiction, which is that it must be attached to a final order of removal. Otherwise, there's no case for controversy. And to some extent, I think, Petitioner here requested as an alternative to the Board reopening on the basis of ineffective assistance of counsel so that they could apply for suspension of deportation. They affirmatively asked the Board in the alternative to administratively close the case so that they could, in fact, be repapered by the government and they could  In doing so, Petitioners effectively staved off deportation temporarily because, but for the administrative closure, they would be subject to a final order of deportation had the Court, had the Board affirmed the denial, the application to stop time to their case. So what is the status of this matter at this point? I suggested to opposing counsel that perhaps his client was not in jeopardy at the moment. Is that a fair statement? The effect of the administrative closure is to effectively preserve the status quo. Petitioners are not in proceedings unless either Petitioners Well, is there an effective order of deportation such that it could be executed today? No, Your Honor. No, there isn't. What happens is if Petitioners want to reopen their case or to recalendar their deportation proceedings, either Petitioners or the government has to affirmatively ask the Board to recalendar the case. If the government instead decides to repaper Petitioners in removal proceedings, then they would be entitled to go through the full panoply of due process under removal proceedings, which includes a hearing on cancellation of removal, but not suspension of deportation. Is there any remedy, any review on the question of suspension of deportation? Counsel suggested that if they didn't get help here, they would have no recourse. Is that correct? I believe that's correct, Your Honor. But the reason that I believe that is because, again, this goes back to the affirmative request to the Board to administratively close the case. Because by staving off deportation temporarily, it doesn't, that, if I can call it a benefit, that benefit doesn't come without forfeit. And the forfeit is Petitioner has foregone the option of staying in this country under the more lenient suspension of deportation standard. Instead, by staving off deportation temporarily and vacating the final order of They have instead decided to go ahead and preserve the option of staying here for the time being, but with the option of applying for relief down the road under the higher, more stringent standard under cancellation of removal. Now, granted, that is a higher standard, but there's absolutely nothing in the case law that requires the government to preserve for Petitioners the lower option so long as there is available to them an avenue of relief. And, again, there is no final order of removal. Because as we have pointed out in our brief, the administrative closure simply takes the case off calendar unless one or both of the parties asks the Board to affirmatively recalendar the case or the government repapers Petitioners. Can you answer one question about the REAL ID Act? Why should it apply retroactively to petitions filed before the enactment of the Act? I found no Ninth Circuit law on this that it should be applied retroactively. I'm sorry, the REAL ID Act? Why should the REAL ID Act section 106D be applied retroactively, which would be the case if we applied it here? I'm afraid I don't understand the question you're asking. In terms of applying the jurisdictional treatment? Yes. And your argument that 106D applies to this case, which was a pre-REAL ID case. Oh, I see. I think what we're saying is what the REAL ID Act says is that any transitional cases that are pending before the Court at the time of enactment, which was May 11, 2005, has to be treated with respect to judicial review as if it was filed under Section 1252 of current 8 U.S.C. We don't believe it necessarily applies to this case because, again, there are no deportation proceedings pending against him. There's no final order of removal from which he could file a petition for review over which the Court has appropriate jurisdiction. So, in essence, the inquiry is academic because — Okay. We just say, under your theory, there's no jurisdiction. Exactly. We don't reach REAL ID. Exactly. And that's why you put it in a footnote. Yes. All right. Thank you. To the extent that the Court — I mean, even if the Court should exercise jurisdiction and say that the Board's order in this case is a final order of removal, I believe — we haven't made an issue of it in our brief because we believe that the lack of a final order is dispositive. But if the Court disagrees and there is a final order, again, there is a second jurisdictional problem. We didn't point this out in our brief, but we are able to raise it because it goes to And that is whether or not there was a timely petition for review that was filed because the Board here initially issued its decision in August of 2004. And then there was an error in that, and it reissued the decision in October, I believe, of 2004. And in the October 2004 decision, they say we vacate our previous decision because there was an error, and we reissue it as of this date, October 2004. The petition for review in this case was filed in September of 2004, not anywhere after the to the extent that the Court also has to — has an independent obligation to assess its jurisdiction. That is also an argument that we want to preserve regarding going to the Court's jurisdiction over the merits or the substance of the challenge to whether or not petitioners have or should be able to get review of the challenge regarding the availability of suspension of deportation. If I could — If we decide there is jurisdiction, do you concede that the Castillo-Perez case controls? No, I don't, Your Honor. And let me tell you why. First of all, Castillo-Perez was decided in 2000. And Castillo-Perez, the Court here specific — the Court recognized that the stop-time rule was at issue, but it specifically declined to address its — to exercise its discretion to address that issue because it found that the ineffective assistance claim was dispositive. And so it didn't need to decide the application of the stop-time rule to transition rule cases. Subsequent to Castillo-Perez, in RAM and also in — the case escapes me now. But in 2001, the Court decided RAM after Castillo-Perez. And in RAM, the Court specifically said that the stop-time rule does apply both to deportation proceedings and to removal proceedings. And so the service of the order to show cause or the notice to appear effectively stops accrual of the continuous physical presence requirement. And whether or not it's retroactive, it doesn't matter. That's the law. And in 2001 as well, this Court decided Castro-Cortez, where the Court specifically recognized that it lacks the authority to order the government to place an alien into deportation, to stop removal proceedings and to place an alien into deportation proceedings, or to allow the alien to apply for suspension of deportation in removal proceedings. So those two cases decided one year after Castillo-Perez, I think, is what controls rather than Castillo-Perez itself. And if we were to get to the merits, what is your position on whether Lozado was complied with? Well, in this case, the Board of Immigration Appeals appears to recognize, or at least the immigration judge appeared to recognize, that there was perhaps an effective existence of counsel. The problem, again, however, is the government here did nothing wrong. And so to the extent that he is, or the petitioners are imputing their private counsel's wrongdoing or lapses of judgment to the government, any claim of due process deprivation has to fail. And let me step back just one second. First of all, there has to be a constitutionally protected liberty interest for petitioners to make out a due process claim with respect to the unavailability of suspension of deportation. But because suspension of deportation is purely discretionary, any due process claim that's predicated on a claim of entitlement to even apply for suspension of deportation, as opposed to cancellation of removal, has to fail. And second, the statutory right to counsel of your own choice at your own expense is the only right to counsel that is provided by Congress in the immigration statute. There's no Sixth Amendment right to counsel. To the extent that the Fifth Amendment in this Court's case law implicates the Fifth Amendment and the guarantee of effective counsel as a due process guarantee under the Fifth Amendment, the government here complied with that Fifth Amendment due process obligation by allowing Petitioner or giving Petitioner the opportunity to go ahead and obtain counsel of his own choice at his own expense. And there's no question of that. And so to ---- Alitoso, your time has expired. Thank you. Thank you. Mr. Hornick, you have some reserve time. Your Honor, I just have a few comments. I believe that Castillo-Perez would control if the case is considered to be within or subject to a final order. And I would note that in the Castillo-Perez case, there was never an allegation by Petitioners that any of their misfortunes, so to speak, were due to actions of the government. As in the present case, the predicament that Mr. Castillo-Perez was placed in was by the ineffective assistance of his counsel. And for that reason, when ---- after the immigration law changed in 1996, the Court concluded that the only way to make Castillo-Perez whole was to apply the law that existed before the 1996 law changed. But there was never any indication that the government had acted in a way that was prejudicial to Castillo-Perez. I would also just comment that to the extent that the Court has concerns about the as a result of Petitioners complying with every element of the Lozada standard, filing a complaint with the California Bar Association, and so on. So I don't think there can be any question that that's why the matter was so ---- Scalia. In other words, there's enough in the record to establish that Lozada was complied with in this case. Carvin. Excuse me, Your Honor. Scalia. Are you saying that there is enough in the record to show that Lozada was complied with in this case? Carvin. Yes. And I have nothing further other than to ask that the Court grant Petitioners prayer for relief. Thank you. Scalia. Thank you, Counsel. The case just argued will be submitted for decision.
judges: Browning, D.W. Nelson, O'Scannlain